**Virgil BUENING, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3583.**

Court of Appeals of Alaska.

July 19, 1991.

---

Marc Grober, Nenana, for appellant.

Karla Taylor–Welch, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

On February 3, 1990, an Alaska State Trooper cited Virgil Buening for speeding based on a radar reading showing that Buening was driving at sixty-six miles per hour in a fifty-five mile per hour zone. At trial, the state offered copies of Division of Measurement Standards calibration certificates to establish that the radar unit used in Buening's case was properly calibrated. The state presented no extrinsic evidence to authenticate the records. Instead, it submitted them in conjunction with a writ-

ten "Attestation of Official Record" in which Gregory Close certified that he was a custodian of records for the Alaska State Troopers in Fairbanks, and that the calibration reports were "true and correct copies of the original certified record under seal in my control on file in my office...." Close's signature on the attestation was notarized.[1]

Over Buening's objection, Magistrate Paul Verhagen admitted the records into evidence, concluding that they were adequately authenticated by Close's attestation. On appeal, Buening challenges this ruling.

The trial court's decision to admit the challenged documents must be measured against the requirements of Alaska Rule of Evidence 902, which specifies eleven situations in which documents and records are self-authenticating—that is, admissible without extrinsic evidence to establish authenticity. Only three of the eleven situations are arguably applicable in this case:

Rule 902. Self–Authentication.

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) **Domestic Public Documents Under Seal.** A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

(2) **Domestic Public Documents Not Under Seal.** A document purporting to bear the signature in his official capacity

1. The full text of Close's "Attestation of Official Record" was as follows:

I, Greg Close am the Custodian for the Records at the Department of Public Safety, Division of Alaska State Troopers, in Fairbanks and I do hereby attest that the attached radar and/or tuning fork certification record from the Alaska Department of Commerce, Division of Weights and Measures, are true and correct copies of the original certified

record under seal in my custody on file in my office at 1979 Peger Road, Fairbanks, Alaska.

The certification for the below listed radar and/or tuning fork instrument has been received and reviewed:

Serial Number: Radar 10828/Forks 29164/19283

Verification date: 5/31/90

The attestation was signed by Greg Close on May 31, 1990, and notarized that same date.

of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and the signature is genuine.

. . . .

(4) **Certified Copies of Public Records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any enactment of the Alaska Legislature or other rule prescribed by the Alaska Supreme Court.

. . . .

■ Under subparagraph (1), the original radar calibration records in this case would have been admissible as public documents without further authentication if they bore Alaska's state seal or the official seal of any department of the state. If the original records bore an official seal, then photostatic copies of those documents would have been equally admissible, at least in the absence of exceptional circumstances or unless Buening raised a genuine question as to the authenticity of the originals.[2]

In the present case, however, although Close's attestation represents that the original calibration records were kept "under seal in my custody," it seems clear from the copies admitted at trial that the originals do not bear an official state or departmental seal and therefore do not qualify as "domestic documents under seal" within the meaning of A.R.E. 902(1).

■ Under subparagraph (2) of A.R.E. 902, any public document bearing the signature of an officer or employee of the state, but not under seal, would be self-authenticating and admissible if accompanied by a sealed certificate from any other state official attesting that the signature on the document was genuine and that the signer had the official capacity claimed in the document.

Here, the radar calibration records bore the signature of Alaska State Metrologist Darrel E. Cavender and would have been self-authenticating under subparagraph (2) if any other state official had certified, under seal, that Cavender was a state metrologist and that his signature was genuine. The "Attestation of Official Record" submitted by Close, however, did not meet these requirements, because it was not under seal and because Close vouched neither for the genuineness of Cavender's signature nor for his standing as a state metrologist. For these reasons, the calibration records were not admissible as self-authenticating under A.R.E. 902(2).

■ Subparagraph (4) of A.R.E. 902 more broadly allows any official record or report, or any recorded document, to be admitted as self-authenticating if its custodian or some other authorized person submits a certification complying with the requirements of either subparagraph (1) or (2) of the rule.[3] Because Close purported to be the custodian of the radar calibration records in this case, his own certification would have rendered those records self-authenticating had it met the requirements of either subparagraph (1) or (2).

Close's certification, however, did not meet the requirements of either subparagraph. The "Attestation of Official Record" submitted by Close was not itself under official seal, as required under subparagraph (1). Neither was the attestation

---

**2.** *See* A.R.E. 1003:

    **Admissibility of Duplicates.**

    A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

**3.** Under A.R.E. 902(4), compliance with the certification requirements set out in A.R.E. 902(3) is also permitted. Because subparagraph (3) deals entirely with foreign documents, however, it is plainly inapplicable here and need not be considered.

accompanied by a sealed certificate from some other state official, in compliance with subparagraph (2), attesting to Close's status as custodian of records and to the genuineness of his signature on the attestation.

■ Under the circumstances, the disputed calibration records did not qualify as self-authenticating documents under A.R.E. 902.[4] Because the state failed to present any witnesses or other admissible extrinsic evidence to establish the authenticity of the records, we conclude that the trial court erred in admitting them over Buening's timely objection.

■ The accuracy of the radar unit used in this case was of crucial significance at trial. In finding Buening guilty, the trial court expressly noted that the trooper's visual estimation of Buening's speed was suspect, but that the radar established that Buening was speeding. Given the weight that the court attached to the accuracy of the radar reading, we are unable to conclude that the admission of the calibration records amounted to harmless error.

The conviction is REVERSED.[5]

---

**4.** One additional subparagraph in A.R.E. 902 deserves brief mention, even though it has not been touched upon by the parties. The calibration records could potentially have been offered as records of regularly conducted activity under subparagraph (11) of A.R.E. 902. Subparagraph (11) provides, in relevant part:

(11) **Certified Records of Regularly Conducted Activity.** The original or a duplicate of a record of regularly conducted activity, within the scope of Rule 803(6), which the custodian thereof or another person certified under penalty of perjury (i) was made at or near the time of the occurrence of the matter set forth, by (or from information transmitted by) a person with knowledge of those matters, (ii) or kept in the course of regularly conducted activity and (iii) was made by the regularly conducted activity as a regular practice, unless the source of information or the method or circumstances of a preparation indicate lack of trustworthiness. A party intending to rely on this paragraph must serve on other parties a notice of this intent and make available for copying relevant documents at least 20 days before the documents are to be introduced at a hearing unless the court shortens this time for good cause shown.

Here, it is unclear whether the preparation of calibration reports would qualify as regularly conducted activity within the meaning of A.R.E. 803(6)—the business record exception to the hearsay rule. Assuming it did, however, Close's certification plainly failed to meet the requirements set forth in A.R.E. 902(11)(i)–(iii), and, in any event, the state evidently failed to comply with the twenty-day notice provision specified in the subparagraph.

**5.** We need not address Buening's remaining issues in light of our reversal.